Linda A. SETLECH, Plaintiff,

v.

UNITED STATES of America, Internal Revenue Service, United States Department of the Treasury, United States Department of Education, New York State Higher Education and Services Corporation and Columbia University, Defendants.

No. CV–89–3903 (RR).

United States District Court, E.D. New York.

Feb. 8, 1993.

Linda A. Setlech, pro se.

Mary Jo White, U.S. Atty., by Warren Ausubel, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY, for U.S.

## MEMORANDUM AND ORDER

RAGGI, District Judge:

For the reasons stated therein, the court hereby adopts in full the Report and Recommendation of Magistrate Judge Zachary W. Carter, dated October 23, 1992 ("Report and Recommendation"), and grants summary judgment in favor of defendants United States of America, Internal Revenue Service, United States Department of the Treasury, and United States Department of Education ("DOE"). The court writes only to address objections to the Report and Recommendation raised by plaintiff, Linda Setlech.

Ms. Setlech argues that her student loans, on which defendant DOE is trying to collect and which underlie her action, are unenforceable because she was mentally incompetent at the time she entered into these transactions. Ms. Setlech, who received a Bachelor of Arts in English Literature from Columbia University in 1977 and has apparently been accepted to graduate teaching programs at both Teachers College of Columbia University and New York University, has not, however, come forward with any evidence regarding her mental or medical condition as required by Federal Rule of Civil Procedure 56(e). For example, she has not submitted any affidavit from a licensed physician, psychiatrist, psychologist, or other potential expert witness attesting to her mental incompetency at the time she signed her loan agreements. Neither has she produced any contemporaneous hospital or other medical reports, nor any adjudication of incompetence. Conclusory statements are not sufficient to raise a genuine issue of material fact as to plaintiff's competency. *See Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

Plaintiff further opposes summary judgment on the grounds that she never received 60–day pre-offset notice from DOE as required by 31 U.S.C. § 3720A (1992 Supp.). In fact, the key issue before the court is whether DOE gave notice " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action,' " not whether plaintiff received actual notice. *Gerrard v. United States Office of Education,* 656 F.Supp. 570, 575 (N.D.Cal.1987) (quoting *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). The court concurs with Magistrate Judge Carter that pre-offset notice was issued by the New York State Higher Education Services Corporation, acting as agent for DOE, to plaintiff at her last known address and that such notice procedures fulfilled the due process requirements of reasonableness. *See* Report and Recommendation at 10–13.

Plaintiff's reliance on *Gibson v. United States,* 761 F.Supp. 685 (C.D.Cal.1991), and *Ringer v. Basile,* 645 F.Supp. 1517 (D.Colo. 1986), in support of her objection to the notice procedure is misplaced. In *Gibson v. United States,* the court held that actual notice of a tax deficiency pursuant to 26 U.S.C. § 6212 was required when the IRS *failed* to send notice to the taxpayer's last known address. 761 F.Supp. at 688–89. In *Ringer v. Basile,* plaintiff sought to quiet title in property that was subject to a tax delinquency sale. Neither case dealt with a claim of failure to receive actual notice in light of reasonable efforts to give notice.

Finally, Ms. Setlech claims that she is the victim of the government's inequitable and discriminatory policy of collecting monies from student loan defaulters by retaining

their tax refunds. Plaintiff does not allege that the government's policy is based upon any classification requiring heightened judicial scrutiny, such as race, gender, religion, or ethnic origin. Consequently, the government's policies must be reviewed under the rational basis test. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440–41, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985). The court is fully persuaded that the policy of collecting on defaulted student loans by retaining tax refunds has a rational basis and is well within federal authority.

For the reasons stated herein, the defendants' motion of summary judgment is hereby GRANTED.

SO ORDERED.

## REPORT AND RECOMMENDATION

ZACHARY W. CARTER, United States Magistrate Judge:

This matter was referred to the undersigned by the Honorable Reena Raggi for a Report and Recommendation on the motion of federal defendants, the United States of America, the Internal Revenue Service (IRS), the United States Department of the Treasury (DOT), and the United States Department of Education (DOE) for summary judgment pursuant to 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 56(b). By separate orders dated July 5, 1990 and October 11, 1990, Judge Raggi dismissed all claims against defendants New York State Higher Education Services Corporation and Columbia University.

## FACTS

Based on the pleadings and evidentiary submissions, the following facts are not in genuine dispute. Between 1969 and 1975, plaintiff, while a student at Columbia University, took out five student loans, totalling $5500, from the Banker's Trust Company under the federally Guaranteed Student Loan Program (GSL program). Higher Education Act, 20 U.S.C. §§ 1071 *et seq.,* (1990). Following her graduation from Columbia on May 18, 1977, plaintiff executed a deferment promissory note which permitted her to defer payments on her GSL loans for one year.

(Daggett Aff. ¶ 19; Ex. 8). It is undisputed that plaintiff never repaid the loans.

Under the GSL program, the New York State Higher Education Services Corporation (NYSHESC), a guaranty agency, guaranteed the loans that were extended to plaintiff by Banker's Trust, the lender. *See* Higher Education Act, 20 U.S.C. at § 1085(d) (defining lender) and § 1085(j) (defining guaranty agency). After plaintiff failed to repay her loans, Banker's Trust Company filed a default claim with NYSHESC. NYSHESC paid Banker's Trust honoring the default claim. The DOE then reimbursed NYSHESC in full for plaintiff's defaulted loans pursuant to its reinsurance agreement. (Daggett Aff. ¶ 20, Ex. 9). *See Games v. Cavazos,* 737 F.Supp. 1368, 1373, 1382 (D.Del.1990) (describing reinsurance provisions under GSL program).

As part of the Deficit Reduction Act of 1984 (the DRA), Congress established a tax refund offset program. The tax offset program permits monies owed on federally insured and unpaid student loans to be deducted from a debtor's federal income tax refund and credited to the DOE. Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 2653, 98 Stat. 494, 1153–56 (1984), amended to continue in effect through 1994, 26 U.S.C. § 6402 and Note (effective and termination dates), 31 U.S.C. § 3720A. Before referring any debt to the IRS, a federal agency owed a past-due legally enforceable debt is required to notify the debtor of the intended referral and to give the individual at least sixty days to present evidence that all or part of the debt is not past due or legally enforceable. 31 U.S.C. § 3720A(b). *See Setlech v. United States of America, et al.,* No. 89 Civ. 3903, Mem. and Order at 3 (E.D.N.Y. filed July 5, 1990) (Raggi, J.). The offset program also requires the DOT to provide post-offset notice to the debtor. 26 U.S.C. § 6402(d)(1)(C).

In 1987, the DOE and NYSHESC entered into an agreement which implemented the offset program authorized by the DRA. (Daggett Aff. ¶ 3). Pursuant to this agreement, NYSHESC compiled a computerized list known as the "pre-offset address tape" that identified debtors' names and social se-

curity numbers of all defaulted GSL loans for which the DOE had reimbursed NYSHESC as of August 1987. (*Id.* at ¶ 4). Plaintiff's defaulted loans were among those that would have appeared on the pre-offset address tape. The tape has since been destroyed. However, by letter dated October 6th, 1987, NYSHESC conditionally assigned to the DOE title to those defaulted loan accounts identified in the pre-offset tape. Plaintiff's loans, identified by name, social security number and amount were included on the computer generated list attached to the October 6th letter. (Daggett Aff. ¶ 9; Ex. 4).

Undisputed is the fact that a "pre–65 day letter" was sent in early October 1987 to the most current address available for each debtor listed on the pre-offset address tape.[1] (Daggett Aff. ¶¶ 5, 11, 13). The pre–65 day letter sent to plaintiff declared NYSHESC's intent to refer the defaulted loan accounts to the IRS which would then apply the debtors' anticipated refund to offset the debt owed to NYSHESC. (*Id.* at ¶ 5; Ex. 2).

On January 29, 1988, plaintiff, then a California resident, filed her 1987 federal income tax return. A letter was attached to the return that indicated a change of address to a post office box in Peoria, Illinois, effective April 1, 1988. In March of 1988, the IRS sent plaintiff a notice to the Peoria address informing her that the offset had occurred. (Daggett Aff. ¶ 17; Ex. 7). According to plaintiff, until her arrival in Peoria on April 15, 1988, she was not aware that her anticipated refund of $2,473 had been paid to NYSHESC, the guarantee agency, in partial satisfaction of her outstanding student loans. (Pl.'s Reply Mem. at 6–7).

In addition to recoupment of her tax refund, plaintiff seeks damages from each of the federal defendants, the United States of America, the IRS, the DOT, and the DOE

for acute emotional and financial injuries caused by defendants' failure to provide her with notice as required by 31 U.S.C. section 3720A. (Pl.'s Reply Mem. at 6–7, 9).

Plaintiff contends that defendants "misled and deceived" her into expecting a refund on her 1987 tax return by sending her a refund for the 1986 tax year and neglected to send Congress a report on the effects of the offset program as "required by 31 U.S.Code § 3720A." (Compl. ¶¶ 14, 18). Plaintiff alleges violations of 31 U.S.C. § 3720A on grounds that (1) the IRS "failed to confirm proper legal procedure for redistribution of plaintiff's income tax refund" permitting the federal agencies "to issue an illegal directive" to redistribute plaintiff's income tax. (Compl. ¶ 15), (2) the federal defendants failed to "obtain sufficient, satisfactory and true evidence that co-defendant NYSHESC had communicated to plaintiff sixty (60) days prior to a request ... for redistribution of tax monies ..." (Compl. ¶¶ 33, 35), and (3) the "IRS had at all times in 1987 the true address of this plaintiff ... but failed in a deliberate and reckless manner to provide plaintiff with reasonable and proper notice." (Pl.'s Reply Mem. at 17–18).

Plaintiff also alleges that the DOE failed to provide student borrowers with "any guarantee of gainful employment or other increased advantages." Rather, she alleges that the loans extended to students only served to create additional debt. Plaintiff contends that she was deceived, enticed and lured into relocating from Peoria, Illinois to New York City and "aim for the stars" by attending Columbia University in order to acquire a college education. (Compl. ¶ 35).[2]

## DISCUSSION

The party moving for summary judgment must establish that there is no disputed issue

---

1. The addresses used to mail the pre-offset letters were determined by a computer matching process containing address listings available to the IRS and NYSHESC. Ultimately, NYSHESC, acting on behalf of DOE, sent the letters to either the address that the debtor had provided to the IRS on his or her most recently submitted income tax return or the most recent address contained in NYSHESC records as obtained from the debtor, state agencies, motor vehicle depart-

ments, or skip tracing services. (Daggett Aff. ¶¶ 6, 7).

2. *See Setlech v. United States of America, et al.,* No. 89 Civ. 3903, Mem. and Order at 3–4 (filed October 18, 1990) (Raggi, J.) (dismissing plaintiff's complaint against Columbia University as barred by applicable statute of limitations for contract or malpractice actions).

of material fact and that it is entitled to summary judgment as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). The party opposing summary judgment may not rest on the mere allegations or denials of its pleadings but rather "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

■ In determining whether an issue should be tried, all facts and inferences must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). In particular, when the party opposing the summary judgment motion appears *pro se*, the court has an obligation to resolve ambiguities in favor of the non-moving party that appears without benefit of counsel. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Green v. Santa Fe Industries, Inc.*, 576 F.Supp. 269 (S.D.N.Y.1983), *aff'd without op.*, 742 F.2d 1434 (2d Cir.1984), *cert. denied*, 469 U.S. 917, 105 S.Ct. 296, 83 L.Ed.2d 231 (1984); *Lacy v. Cooper Hospital/University Medical Center*, 745 F.Supp. 1029 (D.N.J. 1990).

In this case, the federal defendants have the initial burden of proof as to the absence of genuine issues of material fact whose existence or lack thereof would be outcome determinative. · *Celotex Corp.*, 477 U.S. at 324–32, 106 S.Ct. at 2553–57.

## I. JURISDICTION

### A. *Sovereign Immunity Generally*

■ Under the doctrine of sovereign immunity, the United States of America, as a sovereign, possesses general immunity from suit unless the government expressly consents to suit. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Bonanno Org. Crime Fam.*, 879 F.2d 20, 23 (2d Cir.1989); *La Chance v. Drug Enforcement Administration*, 672 F.Supp. 76, 78

(E.D.N.Y.1987). Exceptions to the doctrine must be express, not implied, as both "limitations and conditions upon which the Government consents to be sued must be strictly observed." *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); *Akutowicz v. United States of America*, 859 F.2d 1122, 1126 (2d Cir.1988). Consequently, in this action, the court has subject matter jurisdiction only to the extent specifically provided by statute.

### B. *Federal Tort Claims Act*

■ Plaintiff's complaint alleges various tortious injuries and consequential economic losses caused by each of the federal defendants. Plaintiff states that the IRS "knew or should have known that such delay [in notifying her of the tax refund offset] would seriously destabilize plaintiff economically, mentally, [and] emotionally." (Compl. ¶ 11). With regard to the DOT, the Complaint alleges that

> [a]s a direct and proximate result of [DOT's] negligence and failure to obtain sufficient satisfactory and true evidence ... plaintiff suffered and continues to suffer irreparable harm economically, mentally, socially, ... and continues to suffer from lack of opportunity due to indebtedness.

(Compl. ¶¶ 34, 37).

■ The Federal Tort Claims Act (FTCA) prescribes the conditions upon which the United States government or its employees may be sued for personal injury or loss of property. Specifically, the FTCA requires that a claimant first present any claims to the appropriate Federal agency and that the agency have finally denied the claim in writing. 28 U.S.C. § 2675. This provision requires a final determination of claims prior to commencing an action in federal court. Thus failure to file claims for tort damages with the appropriate agency precludes this court from exercising jurisdiction over those claims. *Id.* § 2675(a). *See In re "Agent Orange" Product Liability Litigation*, 818 F.2d 210, 214 (2d Cir.1987), *cert. denied sub nom. Pinkney v. Dow Chemical Co.*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *Adams v. United States Dep't of Housing*

*and Urban Development,* 807 F.2d 318, 320–21 (2d Cir.1986). Moreover, the filing of an administrative claim is a jurisdictional requirement and therefore cannot be waived. *Keene Corp. v. United States,* 700 F.2d 836, 841 (2d Cir.1983).

In the present case, it is undisputed that plaintiff has failed to first present her claims to the appropriate federal agency, the DOE, and exhaust the available administrative remedies. (Fernandez Decl. ¶¶ 1–4). As a result, under section 28 U.S.C. section 2675(a), the district court lacks subject matter jurisdiction over plaintiff's claim for damages based on alleged tortious injury caused by the DOE, DOT and IRS.

### C. Deficit Reduction Act–Limited Jurisdiction of United States Courts

■ 26 U.S.C. section 6402(e) specifically provides that no court of the United States shall have jurisdiction to hear any action brought to restrain or review an authorized reduction of a tax overpayment under the offset program. *Richardson v. Baker,* 663 F.Supp. 651, 653 (S.D.N.Y.1987) (dismissing claims based on offset program against DOT for lack of subject matter jurisdiction); *Sartorious v. United States Dep't of the Treasury and Internal Revenue Service,* 671 F.Supp. 592, 594 (E.D.Wis.1987) (dismissing claims based on offset program against IRS and DOT for lack of subject matter jurisdiction). Consequently, this court does not have subject matter jurisdiction to entertain plaintiff's claims against the United States, the IRS or the DOT arising from the reduction of plaintiff's tax refund under section 6402(d).[3]

However, section 6402(e) does "not preclude any legal, equitable, or administrative action against the federal agency to which the amount of such reduction was paid" as authorized by section 6402(d). 26 U.S.C. § 6402(e). Consequently, this court does

have subject matter jurisdiction to hear plaintiff's non-tort claims against the DOE relating to that agency's alleged failure to observe the pre-offset notice requirements provided under 31 U.S.C. section 3720A(b)(1).[4] *Richardson,* 663 F.Supp. at 654; *see Nelson v. Regan,* 731 F.2d 105, 110 (2d Cir.1984), *cert. denied sub nom., Manning v. Nelson,* 469 U.S. 853, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984).

### II. NOTICE CLAIM

■ Plaintiff claims that the DOE failed to provide her with the 60–day pre-offset notice required by 31 U.S.C. section 3720A. (Compl. ¶¶ 33, 34; Pl.'s Reply Mem. at 17–18). Plaintiff seeks recoupment of the tax refund paid over to the DOE. Defendant DOE argues that this court lacks authority to order return of plaintiff's tax refund even if it should find that section 3720A's notice requirements were not observed. The court undoubtedly would have authority to grant an injunction requiring the DOE to provide plaintiff an opportunity to "present evidence that all or part of the debt is not past-due or not legally enforceable" upon a finding that adequate notice was not given. 31 U.S.C. § 3720A; *see Regan,* 731 F.2d at 110 (injunctive relief proper in a suit for declaratory judgment challenging notice and opportunity to contest). As more fully discussed below, in as much as the record establishes that reasonable notice was given, the court need not reach the question of whether it has authority to order return of plaintiff's tax refund.

To determine claims of inadequate notice, courts generally focus on the reasonableness of the method used to provide notice. The form of notice used must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cen-*

---

**3.** The DOT is responsible for providing post-offset notice under 26 U.S.C. section 6402(d)(1)(C). As discussed above, the district court does not have jurisdiction to entertain any claims against the DOT arising under this section.

**4.** In light of 26 U.S.C. section 6402(e)'s clear mandate permitting suits against the receiving

federal agency, this court need not address the issue of whether the Tucker Act also vests subject matter jurisdiction in the district court. 28 U.S.C. § 1346(a)(2) (providing original jurisdiction of district and claims courts); *see* Def.'s Mem. at 15 (discussing jurisdiction based on Tucker Act).

*tral Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Moreover, the "reasonableness" of the means used to provide notice may often depend on the number of individuals to be notified. *See Vancouver Women's Health Collective Society v. A.H. Robins Co., Inc.,* 820 F.2d 1359 (4th Cir.1987) (holding that use of public relations campaign to notify potential claimants in a products liability action was reasonable due to large number of individuals to be notified). Undoubtedly the federal tax offset program affects a great number of individuals. In 1988, the year plaintiff's refund was appropriated, the DOE had referred close to 600,000 federally guaranteed student loans to the IRS for offset. *See Games v. Cavazos,* 737 F.Supp. 1368, 1381 (D.Del.1990).

Plaintiff contends that she was not aware of the offset until she arrived in Peoria on April 15, 1988, and that therefore, the DOE was not in compliance with the statute. (Pl.'s Reply Mem. at 6–7). Existing computer records reliably establish that in early October of 1987, NYSHESC, acting as agent for the DOE, mailed to plaintiff, at the most current address then known, the pre–65 day offset letter providing notice of the intended referral and offset. (Daggett Aff. ¶ 11; Ex. 1 at 2, "*Sixty–Five Day Letter*"). There is no indication that the letter was returned as "undeliverable." (Daggett Aff. ¶ 13). Courts have repeatedly recognized that the use of mail service is "an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 489, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988); *Mullane,* 339 U.S. at 319, 70 S.Ct. at 659; *Weiger v. City of New York,* 852 F.2d 646, 650 (2d Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989); *see Gerrard v. U.S. Office of Education,* 656 F.Supp. 570, 575 (N.D.Cal.1987). The use of the mailing address provided by the IRS for the pre-offset letter was reasonably calculated to notify the vast majority of debtors of the intended referral and proposed offset. *See Gerrard,* 656 F.Supp. at 575.

The means used to provide notice need not eliminate all risk of non-receipt. *Weiger,* 852 F.2d at 649–50 (*quoting Mullane,* 339 U.S. at 319, 70 S.Ct. at 659); *Tulsa Professional,* 485 U.S. at 489, 108 S.Ct. at 1347 ("impracticable and extended searches ... in the name of due process" not required) (*quoting Mullane,* 339 U.S. at 317–18, 70 S.Ct. at 659). Essentially, the "proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected" and not whether each individual actually received notice. *Weiger,* 852 F.2d at 649; *Friedman v. Dep't of Housing & Dev. Admin.,* 688 F.Supp. 896, 900 (S.D.N.Y.1988), *aff'd without op.,* 876 F.2d 890 (2d Cir.1989), *cert. denied,* 495 U.S. 961, 110 S.Ct. 2570, 109 L.Ed.2d 752 (1990); *Sheiner v. City of New York,* 611 F.Supp. 172, 176 (E.D.N.Y.1985) (stating that "[a]ctual receipt of notice is not constitutionally required"); *Stateside Machinery Co. v. Alperin,* 591 F.2d 234, 241 (3d Cir.1979) (noting that failure to receive notice does not necessarily invalidate service on due process grounds).

The record on this motion for summary judgment clearly establishes that the procedures used by the DOE to provide notice to plaintiff were reasonably calculated, under all of the circumstances, to inform plaintiff of the intended referral and to afford her an opportunity to present her objections to collection of the defaulted loans by tax refund offset. The form of notice given to plaintiff conforms with 31 U.S.C. section 3720A and requirements of due process.

## CONCLUSION

Based on this record which raises no genuine disputed issue of material fact, it is respectfully recommended that the court grant the federal defendants' motion for summary judgment. Objections to the recommendations made herein may be entertained if filed with the Honorable Reena Raggi within ten (10) days of receipt. Failure to file objections within the specified time waives the right to appeal the district court's order with respect to this report. 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 6(a), 6(e) and 72(b).

**168**

Dated: October 23, 1992
Brooklyn, New York